UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-20775-CR-SEITZ

UNITED STATES OF AMERICA,

vs.

BRAXTON GEOVANNI BELL,

_____/

## ORDER DENYING MOTION TO SUPPRESS PHYSICAL EVIDENCE

The defendant seeks suppression of debit and credit cards that were seized from his wallet after his arrest. The Court finds that the initial traffic stop of the defendant's vehicle was constitutionally valid. The Court also finds that the initial detention and eventual arrest of the defendant were likewise lawful. Furthermore, the Court holds that the seizure of the contents of the defendant's wallet was permissible under the inventory search exception to the Fourth Amendment's warrant requirement. Therefore, the motion to suppress is denied.

## FACTUAL BACKGROUND

On a summer evening in 2012, Miramar Police Department Detective Marc St. Fort observed the defendant, Braxton Bell, driving at a high rate of speed. The detective stopped Bell's vehicle, along with a second car that he had seen racing alongside defendant's. After issuing a citation to the driver of the second vehicle, the detective approached Bell and noticed the odor of marijuana. The detective requested a drug dog. A narcotics canine officer was dispatched to the scene. When the canine officer arrived, the detective informed Bell that he had been stopped for a traffic violation and

that he smelled marijuana emanating from the vehicle. The canine officer then approached Bell's vehicle and saw what he described as a green, leafy substance in Bell's lap. When asked if he would consent to a search by the narcotics canine, Bell refused. Bell was then directed by the officers to step out of the car, at which point the canine officer saw what appeared to be marijuana on the rear of the defendant's pants and on the driver's side seat. Bell was detained and a field test was conducted on the green, leafy substance found in Bell's car and on his person[1]. The substances field-tested positive for marijuana. Bell was subsequently arrested for possession of less than twenty grams of marijuana in violation of Florida Statute § 893.13(6)(b) and was issued a traffic citation for careless driving.

Bell was initially taken to the Miramar Police Department's headquarters for processing, at which time the arresting detective seized and documented Bell's belongings in accordance with the Miramar Police Department's "Prisoner Processing & Direct Booking" Policy & Procedures. During the course of the inventory search, Detective St. Fort noticed among the contents of the defendant's wallet two Green Dot debit cards with pieces of masking tape affixed to them.[2] Handwritten on the tape were numbers and what appeared to be names other than Bell's. Upon further inspection, the detective discovered that the debit cards were issued to a cardholder other than Bell. Based upon his suspicion that these cards were being used to commit fraud, St. Fort reached out to an officer at the

---

[1] Upon restraining Bell, the canine officer began to suspect that Bell had recently ingested marijuana and requested that Bell's mouth be swabbed for testing. A third law enforcement officer took a swab from Bell's mouth which field-tested positive for marijuana. Afterwards, the narcotics canine "alerted" police to a small amount of a similar leafy substance in the passenger side and driver's side doors and on the driver's side floor board. The substance discovered also tested positive for marijuana.

[2] The complete list of inventoried items reads as follows: (a) one Florida driver's license; (b) one MasterCard credit card; (c) one American Express credit card; (d) two Bank of America Visa cards; (e) two Green Dot Visa cards; (f) one Western Union money order in the amount of $500; (g) three receipts from "Elite Fine Jewelry"; (h) one Home Depot card; (i) four "miscellaneous" cards; (j) one black iPhone; and (k) $1,200.00 in U.S. currency. *See* Gov.'s Supp. Resp., Ex. 3 (Miramar Police Dept. Property Receipt).

Internal Revenue Service's criminal investigation task force regarding the cards seized during the inventory search of Bell's property. An Internal Revenue Service officer determined that the two "Green Dot" debit cards found in the defendant's possession were indeed funded by fraudulently obtained, United States Treasury Department issued tax refund proceeds. The IRS officer also determined that an American Express credit card contained in the defendant's wallet was fraudulent.

## BELL'S MOTION TO SUPPRESS

The defendant filed a motion to suppress, arguing that (1) the police officers lacked probable cause to stop his vehicle; (2) that the police officers lacked probable cause to arrest him for marijuana possession; (3) that the officers' search of his person and vehicle were unlawful; and (4) that the post-arrest search of his wallet exceeded the limited scope of the inventory search exception to the Fourth Amendment's warrant requirement. Bell argues, any physical evidence derived from the stop, arrest and subsequent searches must be suppressed. The Court addresses each argument in turn.

### 1. *The traffic stop*

In challenging the legality of the stop which led to his arrest, the defendant asserts the officers had no credible probable cause to effect the traffic stop of the car driven by Bell. Under the Fourth Amendment, a decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation occurred. *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). Probable cause exists where an officer reasonably believes that a car is speeding and the speeding constitutes a traffic violation. *United States v. Pruitt*, 174 F.3d 1215, 1217 n.1 (11th Cir. 1999). Any ulterior motive a police officer may have for making the traffic stop is irrelevant. *Whren*, 517 U.S. at 813.

During the suppression hearing, Detective St. Fort testified credibly that he had observed Bell's vehicle traveling at a high rate of speed and moving in and out traffic lanes. St. Fort also testified that he saw Bell "racing" alongside a second vehicle, whose driver was stopped and subsequently cited for careless driving. Detective St. Fort's testimony, which the Court finds credible, established that, in racing his vehicle down a major thoroughfare during rush hour, Bell was driving recklessly in the moments leading up to the traffic stop. *See* Fla. Stat. § 316.029(1) ("Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."). Accordingly, Detective St. Fort had probable cause to believe that Bell had committed a traffic violation. The stop of Bell's vehicle was lawful.

2.  *Bell's initial detention and arrest*

Next, Bell argues that, even if the initial stop of the car were lawful, the scope of his detention extended past its lawful purpose. Bell also contends that the officers did not have reasonable, articulable suspicion to order him out of the car and search his person. Bell does not challenge the length of time that it took for the canine officer to arrive on the scene, but instead challenges the extent of the detaining officers' investigation of the traffic stop.

Traffic stops are "especially fraught with danger to police officers." *Michigan v. Long*, 463 U.S. 1032, 1047 (1983). The risk of harm to both the police and the vehicle's occupants is minimized if the officers routinely exercise unquestioned command of the situation. *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). Once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures. *United States v. Brooks*, 448 Fed. Appx. 27, 29 (11th Cir. Nov. 22, 2011) (citing *Arizona v. Johnson*, 555 U.S. 323, 330-33 (2009)).

The government's "legitimate and weighty" interest in officer safety outweighs the "*de minimis*" additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle. *Pennsylvania v. Mimms*, 106, 110-11 (1977) (per curiam).

As discussed above, Bell's vehicle was lawfully detained for a traffic violation. After the vehicle came to a stop, Detective St. Fort noticed the smell of marijuana coming from the car, which prompted him to request the assistance of the narcotics canine officer. When the canine officer approached the vehicle, he noticed what appeared to be loose marijuana scattered across the defendant's lap. The canine officer ask asked Bell if he would consent to a search by a drug dog. Bell refused. Bell was then ordered out of the vehicle by the canine officer. This is the kind of permissible intrusion discussed in *Mimms*. *Id.* When Bell exited the vehicle, the canine officer noticed more loose marijuana on the defendant's person and on the driver's seat. The officers noticed the loose marijuana stuck to the defendant's jeans when he exited the vehicle. Once he observed what appeared to be loose marijuana on the front seat of the defendant's car, the canine officer restrained the defendant using wrist restraints. Like the stop of the defendant's vehicle, the canine officer's demand that Bell exit the vehicle was lawful. The arrest was likewise reasonable under the Fourth Amendment because it was supported by probable cause. *See United States v. Lightbourn*, 357 Fed. App'x 259, 265 (11th Cir. 2009) (finding there was probable cause to arrest the defendant for possession of marijuana where the officer observed marijuana in plain view in the defendant's seat as he patted him down).

*3. The search of Bell's vehicle*

Next, Bell challenges the search of his car, claiming police lacked probable cause to believe that it contained contraband. *See* Def.'s Mot. at 4.

A vehicle search conducted pursuant to probable cause may include any item and

compartment in the car that might contain the object of the search. *Colorado v. Bertine*, 479 U.S. 367, 375 (1987). If officers have probable cause to believe that a car contains contraband, they may search it without waiting for a warrant to issue. *Maryland v. Dyson*, 527 U.S. 465, 467-68 (1999) (per curiam). However, police may not search the passenger compartment of a vehicle incident to a recent occupant's arrest unless it is reasonable to believe either (1) that the arrestee might access the vehicle at the time of the search or (2) that the vehicle contains evidence of the offense of arrest. *See Arizona v. Gant*, 556 U.S. 332, 344 (2009).

Here, marijuana possession was the "offense of arrest." *Id.* at 351. The officers had ample reason to believe the vehicle contained evidence of this offense. Detective St. Fort testified to smelling an odor resembling marijuana emanating from the defendant's car. *See United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982) ("[T]he recognizable smell of marijuana gives rise to probable cause supporting a warrantless search."). Further, the canine officer saw what he believed was loose marijuana on the defendant's lap and on the driver's side seat of the vehicle. *See United States v. Brown*, No. 11-15590, 2012 WL 5907378, at *1 (11th Cir. Nov. 21, 2012) (finding marijuana in plain view of officers indicated a fair probability that there was contraband in the defendant's car and gave rise to probable cause to search the vehicle). This probable cause was bolstered by the drug dog's alert to the driver's side door of the vehicle. *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993) ( "[P]robable cause arises when a drug-trained canine alerts to drugs[.]"). Accordingly, the search of Bell's vehicle was lawful.

### 4. The inventory search of Bell's wallet

Bell next challenges the constitutionality of the search of his wallet, which yielded evidence of the crimes with which he is presently charged: access device fraud and aggravated identity theft.

The government contends that the search of Bell's wallet was lawful pursuant to the inventory search exception.[3]

Inventory searches of personal property are "a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "At the stationhouse, it is entirely proper for the police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed. A range of governmental interests supports an inventory process." *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983). Specifically, "inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372. An inventory search is not, however, intended to be investigatory. *United States v. Khoury*, 901 F.2d 948, 958-59 (11th Cir. 1990). Its scope may not exceed the purposes described in *Bertine*. Likewise, an inventory search cannot be a "ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

### A. The scope of the inventory search

Bell claims that the search which yielded the government's evidence against him exceeded the inventory search exception's limited scope. Specifically, Bell argues that Detective St. Fort unlawfully removed the contents of his wallet and was not justified in reading account numbers or "notes" attached to the cards. The government maintains that it was reasonable for Detective St. Fort to

---

[3] The government has at times relied on the incident to arrest exception to justify the search of Bell's wallet. *See* Gov.'s Resp. at 7. Defendant argues that the search was not conducted until Bell was "well on his way to jail[.]" Def.'s Supp. Mot at 3. After hearing testimony on the motion, the Court finds that although Bell's wallet was examined upon his arrest, the cards in question were not uncovered until the inventory search at the police station. Thus, the Court finds the incident to arrest exception cannot justify the search of the wallet. *See United States v. McCroy*, 102 F.3d 239, 240 (6th Cir. 1996) (distinguishing cursory, incident-to-arrest search of the defendant's wallet from inventory search conducted during processing).

remove and inventory the cards in order to protect Bell's property as well as to protect the City of Miramar Police Department from claims of lost or stolen property.

A police department's policies and procedures concerning inventory searches are of primary importance in assessing the validity of a particular search. *Wells*, 495 U.S. at 4 ("In order to insure an inventory search is limited in scope it must be carried out according to standard procedure."). Detective St. Fort testified that, in opening Bell's wallet and examining the individual items contained in the wallet, he was complying with the Miramar Police Dept.'s "Prisoner Processing & Direct Booking" Policy & Procedures ("[a]ll persons arrested and taken into custody for transport to a booking facility shall have personal property seized and documented on an Inmate/Detainee Property form. . . ."). The property form referred to in the policy further prompts the officer conducting the search to identify individual personal property items by name, serial number, model number, brand and color. *See* Gov.'s Supp. Resp., Ex. 3.

The Court finds Detective St. Fort's inventory search of Bell's property was conducted in accordance with his department's established booking procedures requiring an arrestee's personal property to be "seized" and "documented." The removal and documentation of the items found in the defendant's wallet is similarly consistent with the descriptors solicited on the arresting agency's personal property form. Additionally, the Court finds that this policy to be consistent with the recognized administrative purposes of the inventory search. *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992). The Miramar Police Department's policy is clearly designed to identify each item taken from an arrestee.

In practice, Detective St. Fort's scan of Bell's property was just thorough enough to allow for a specific description of each item. This is especially important for the kinds of property contained

in a person's wallet: valuable items such as money, debit and credit cards.[4] St. Fort's scan also enabled him to detect several obvious irregularities on two of the debit cards in the defendant's possession. To the extent this review of the items contained in the defendant's wallet constituted a search, it was well within the scope of the inventory exception to the Fourth Amendment's warrant requirement. This distinguishes the case relied upon by Bell for the proposition that any investigation subsequent to an inventory search is unlawful: *United States v. Khoury*, 901 F.2d 948, 958-59 (11th Cir. 1990). Unlike the officer in *Khoury*, Detective St. Fort's initial inventory of the items involved nothing more than a cursory examination of the face of debit cards in question, both of which had irregular pieces of tape affixed to them. In *Khoury*, meanwhile, the officer perused an already-inventoried notebook to determine if it had evidentiary value. St. Fort's determination that the debit cards were contraband was instantaneous on the other hand. Here, unlike in *Khoury*, the search giving rise to the evidence involved "a valid inventory or exigent circumstances exception" and was therefore lawful. *Id.* at 959.

B. *The subsequent investigation*

Bell also contends that even if St. Fort's inventory search were constitutionally valid, he had no authority to continue his investigation of the cards and turn the wallet's contents over to a second officer for further investigation. The defendant is asking the Court to require police to obtain a search warrant before conducting a cursory inspection of highly suspicious items that are within an officer's plain view. *See Texas v. Brown*, 460 U.S. 730, 738 (1983) (explaining that "plain view" doctrine

---

[4] Several circuit courts have determined that a stationhouse search of the contents of a wallet without a warrant satisfies the inventory exception to the warrant requirement if it is conducted in accordance with established procedures. *See United States v. McEachern*, 675 F.2d 618, 622 n.6 (4th Cir.1982); *United States v. Matthews*, 615 F.2d 1279, 1286 (10th Cir.1980); *United States v. Gallop*, 606 F.2d 836, 839 (9th Cir.1979); *see also United States v. Chappell*, Case No. 09-139-CR-ERICKSEN/KEYES, 2010 WL 1131474, at *12-14 (D. Minn. Jan. 12, 2010 ) (finding a police department's decision to record credit card information served the caretaking function of an inventory search because credit cards are "valuable property that must be safeguarded when an individual is arrested").

provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment). This Court has no authority to impose such a requirement.

"The cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, 'a defendant must demonstrate that he personally has an expectation of privacy in the place searched.'" *U.S. v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (citing *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)). Bell lost his expectation of privacy in the contents of his wallet when he was arrested and his property became subject to a lawful inventory search. *United States v. Morris*, 166 F.3d 339 (5th Cir. 1998) (concluding "it was proper for the police to remove [a] pawn ticket from [the defendant's] wallet and unfold it to look for contraband. At that point, [defendant] no longer had a privacy interest in the property, and it was proper to seize it without a warrant")

The plain view doctrine is no less applicable inside a police station than on the street. Police officers cannot be expected to ignore highly suspicious items such as counterfeit money or debit cards uncovered during the course of a lawful inventory search. *United States v. Moore*, No. 2:05-CR-50-FTM-29, 2006 WL 560640, at *7 (M.D. Fla. 2006) (holding where "the inventory of the vehicle was consistent with the policy and practice of the LCSO, [ ] an officer is not obligated to turn a blind eye to documents which may have evidentiary value").

Contraband discovered during the course of a valid inventory search may be seized by police. *Bertine*, 479 U.S. at 376; *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983). This is true even of items that are not so obviously illegal as drugs and weapons. See *United States v. Susini*, 261 Fed. App'x 270, 274 (11th Cir. 2008) (credit cards); *United States v. McCroy*, 102 F.3d 239, 239-40 (6th Cir. 1996) (pawn shop tickets); *accord United States v. Chappell*, Case No. 09-139-CR-ERICKSEN/KEYES, 2010 WL 1131474, at *3-4 (D. Minn. Jan. 12, 2010) (credit cards). Where, as

here, an officer instantly recognizes evidence of criminal activity among an arrestee's belongings, he should likewise be allowed to seize the evidence and conduct an investigation. As long as the inventory search is valid, the evidence is admissible. *Lafayette*, 462 U.S. at 648; *South Dakota v. Opperman*, 428 U.S. 364, 372-73 (1976). Contrary to the defendant's assertions, the officer conducting the inventory search is also free to involve other agencies in the subsequent investigation of the seized item. *See, e.g., United States v. Jones*, CR. NO. 2:12cr30–MEF, slip op. at *2 (M.D. Ala. June 15, 2012) (finding that inventory search was valid where local police officer turned over to the DEA drugs discovered during an automobile inventory search).

## CONCLUSION

The stop of the defendant's vehicle was based upon probable cause. The subsequent search of the defendant's person and vehicle was lawful. The seizure of the contents of the wallet was permissible under the inventory search exception and, ultimately, under the plain view doctrine. Accordingly, the defendant's motion to suppress is denied.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of January, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record